05-1544 Kevin Lawler v. Nike, Inc., Nike Retail Services Incorporated. Mr. Fair. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, my name is Eugene Fair of Mintz 11 and I represent Mr. Lawler. Now I'd like to focus on the claim construction issues, I'll rest on our briefs on the doctrine of equivalence issue. Now an important reason Mr. Lawler appealed this case is because the district court incorrectly construed the claim term a bottom sole to mean, quote, the outsole of the shoe, which is the part of the shoe that contacts the ground and is also the lowest part of the sole, unquote. That construction is incorrect because it improperly limits the term a bottom sole to the outsole, thus precluding the possibility of a bottom sole having a further thin tread layer attached to it. Mr. Lawler's argument is rather straightforward. The district court erred because it did not give full effect to the relational aspect of the claim term in context with the surrounding claim language. The district court did not give effect to the full ordinary meaning of a bottom sole, which is not necessarily limited to a thin part of the sole that contacts the ground. The district court did not give any effect whatsoever to the open-ended comprising format of the claims. Now the starting point of course must be the 3-2-1 pact. That's the first pact. Can we just as a matter of glossary for the case, as we have these various terms floating around, is it agreed that outsole, that term, means the portion that touches the ground? Well, the evidence, Your Honor, is that to one of the ordinaries still in the archy, outsole is the part of the sole that gives it durability and traction. It's the tread layer, and you can see that on 26-7. It's a thin tread layer. Okay, so if bottom sole means the same thing in the way the patents are written as outsole, if they mean the same thing, then that is the, that's consistent with the trial judge's claim construction. That's the basis that the trial judge found this, I'm going to get to that. The claim, as I said, Your Honor, the starting point of course has to be the 3-2-1 pact. It was filed about 13 years before the 0-4-6 patent was filed. It was issued for over 10 years, over a decade, over half the life, half of its life before the 0-4-6 patent was even filed. The 3-2-1 and 0-4-6 patents are not legally related because of that decade long gap between the issuance of the 3-2-1 patent and the filing of the 0-4-6 patent. Now the claim term, as I said, that we're dealing with in the context of its surrounding claim language is a bottom sole attached to the bottom of said upper sole. You'll notice that it's just written relationally with respect to the upper sole. All it calls for is a bottom sole attached to the bottom of the upper sole. The claim term actually chosen by the inventor is not the out sole as read into the claim by the district court. But all the pictures show it as an out sole? It's hard to say that the inventor contemplated that it be something other than the out sole since that's in, again, all of the drawings. Well, Your Honor, in the 3-2-1 patent he never used the term out sole to describe it. He always described it as the bottom sole. Okay, but reading the specification, as I'm not an expert in shoe design, but just looking at it, it's shown consistently as the outer sole, isn't it? For the bottom sole, Your Honor, he has one preferred embodiment. It's shown basically like this without the red here. You've added the red, right? I've added the red, and I'll get to that in a little bit. But there's nothing in the where Mr. Lawler clearly and unmistakably indicated, using words or expressions of manifest exclusion or restriction, that he was unequivocally importing a novel meaning to the word bottom sole, or that he was limiting it to an out sole, or that he was precluding the bottom sole from having a further ground contacting tread layer attached to it. There's simply nothing like that in the 3-2-1 patent. Why are you using all this language which sounds like language of disavowal? I mean, it seems to me this question is simply what this word means in this context. And it isn't necessary, it would seem to me, unless I'm missing something here, to look for some clear manifestation of an intent to disavow something that otherwise would plainly be there. The question is, does bottom sole mean the same thing as out sole? Well, the ordinary meaning of bottom, the inventor has given the ordinary meaning of the term he's chosen in the claim, a bottom sole. It's not nearly as restrictive as the district court implied. Well, but your submission is that's the ordinary meaning, but the submission of the other side is it's not. Right, but the only evidence from one of ordinary skill in the art, who was Dr. Williams, he wouldn't consider a bottom sole to be limited to the out sole, reading the specification, reading the prosecution history. Did he say the same thing with respect to the 046 patent? Yes, he did. Even though the 046 patent says bottom sole or out sole. He looked at the 046 patent and he came to the conclusion that the 046 patent was using, because of all the language in it, was using the bottom sole the same way as in the 3-2-1 patent. He looked at it and said, they've used the word bottom sole in the specification and out sole, but at the time he claimed the term, he only used a bottom sole in the claim in indicating an intent not to narrow the scope from the 3-2-1 patent because of the references in the 046 to the 3-2-1 patent. The 046 is later and you can't put the cart before the horse, so to speak. You have to look at the 3-2-1 patent first. Am I correct that during the prosecution you proposed an amendment for a closed cup that was rejected by the examiner? I'm looking at page, well, 1976. At the very bottom there it says each such cup includes a closed cup shaped cavity. And then we see later in 1986 that applicants' arguments directed towards a closed cavity are essentially rejected because there wasn't support in the disclosure. Your Honor, there were other claims that were allowed in the 3-2-1 patent, for example. If I'm reading that prosecution history correctly, it would seem that you proposed an amendment that would have had a closed cup, a cup that had something beneath it, a part of the midsole perhaps would be a way to say it. And that was rejected by the examiner because of lack of support in the specification. Well, Your Honor, there was another claim, Claim 12, that was based off the same claims. At the time, I believe Claim 13 was Claim 10. But Claim 12 refers to a sole in accordance with Claim 10 wherein each cup includes a cavity interspersed between the top and bottom surfaces of the bottom sole. So you have a cavity, you have Claim 12 specifically claims an inverted cup interspersed between the top and bottom surfaces. So there was no disclaimer taking that into account. No, but those are rejected. Claim 12 is rejected. And the closed cup amendment is rejected by the examiner, suggesting that the prosecution history also saw that the cup would have to be in contact with the bottom or the ground engaging surface of the shoe. There would not be a closed, there wouldn't be something beneath it. What I'm saying, Your Honor, is that issued Claim 12 is directed to a similar issue, which allows the cup-shaped cavity interspersed between the top and bottom surfaces of the bottom sole, implying that it can be closed. And which claim is that? Claim 12, the last claim. Of 321? Of 321, 842. Clearance. Now, Your Honor, as we put in our brief, the consequences of the district court's erroneous plan construction is apparent. And let me turn to this drawing. It's an illustration from page... Wait, wait, wait. But Claim 12 says the cup, the cavity, goes, as I understand it, between the top and bottom surfaces of the bottom sole. Yes, Your Honor. And therefore it extends all the way from the bottom of the bottom sole, which if the bottom sole means the ground-touching element, it goes all the way to the ground. I don't think it necessarily needs to go all the way to the ground. It just needs to be interspersed somewhere in between the two. That's all it's saying. It doesn't say, it doesn't have all that additional language that you just put in, where it has to go from the bottom to the top. But where in the specification is the language that you tell us is the appropriate support for Claim 12? Sure. In the specification, Your Honor, it says in column 3, this is page 41, column 3, lines 16 through 18, alternatively the cup may be located between a flat bottom surface and midsole 14 to form, in effect, a cup-shaped bubble in the bottom sole. In the bottom sole. It's referring to a cup-shaped bubble, indicating that the inventor clearly contemplated... Well, it's not so clear because none of the drawings show anything below the cup. Well, Your Honor, and if you read the prosecution history, you gave up a closed cup. So, indeed, if you read all of this language you've just given us, in light of the prosecution history, it seems to support the reading that Judge Bryson gave to it, because the cup cannot be closed. You gave up on that amendment. Well, I don't think, Your Honor, that Mr. Lawler gave up on the notion of having... Well, the examiner rejected it. The examiner, right, but I don't think Mr. Lawler gave up on the notion of having a cup, the cup interspersed between the top and bottom soles, because that is clearly disclosed. But the bottom sole engages the ground, therefore the cup would be open, and that seems to be supported by the prosecution history, which says your effort to have a closed cup was rejected by the examiner. But it is, having a cup in the form of a bubble in the bottom sole is disclosed in the 3-2-1 patent in the column and line item that I just went through. Now, did you assert Claim 12? The district court refers to Claims 1 of the 3-2-1 and Claim 1 of the 0-4-6. Right. The only asserted claim in the 3-2-1 patent is Claim 1 and the 0-4-6 patent is Claim 1. Why wasn't Claim 12 asserted if it reads as you argue now that it does? Because for litigation purposes, they only asserted Claim 1 in the case, in that patent. Your Honor, one more point I would like to make. This demonstrates the consequences of the claim, the Your Honor's growing claim construction. As reported in our brief, in accordance with the court's claim construction, Nike or anyone could take this preferred embodiment, put a thin tread layer on it, and completely avoid the infringement, getting all the benefits of the invention. That's not what the inventor intended. And as it is, because of that consequence, the district court found and granted some Okay. Thank you. Mr. Madera. Thank you, Your Honor. Good morning. I think the court is hit on all the key issues. Judge Rader, you're right. There was an effort to put in a claim to a closed cut. The examiner rejected it on the basis of no support for Specification 112, Section 1. They acquiesced in the rejection by canceling one claim specifically directed to the closed cut and removing the language directed to the closed cut out of the other claim. It was acquiesced. They never argued that the examiner was wrong. It's also correct that this is not a drawing that ever appeared in the patent. This is something that has been modified by counsel. Counsel conceded that. Counsel acknowledged that. Yes, it was modified. Because Judge Newman, you asked the question, is there anything in the patent that shows the bottom layers other than an outsole? The answer is no. Every embodiment, they say there's one embodiment, maybe there's two. Each embodiment in the patent shows the bottom layer as the outsole. And why is that important? It's important because what did Mr. Lawler say he was doing here? He said conventionally, athletic shoe manufacturers have used the midsole as the shock-absorbing layer of the sole, typically a foam. And the outsole is simply the ground contact portion of the shoe for traction and wear resistance. He said, I'm going to go the other way. I'm going to do something completely the opposite. I'm now going to make the outsole the shock-absorbing element in the shoe. And the way that I'm going to do that is I'm going to disperse within the outsole these cups, inverse cups. And those cups will carry through the midsole. If you look at column one, line 66-67, it says the bottom sole is the bottom of the upper sole. It doesn't say that it's the ground contacting portion, it's just the bottom of the upper sole. You're looking at, Your Honor, that was column one? Column one, 66 and 67. The convention features a shock-absorbent shoe sole. A bottom sole is attached to the bottom of the upper sole. So all they're saying is that maybe the bottom is in relation to the upper sole. Your Honor, the preamble says the frame of reference for the claim. Let's look at the claim as a whole. What the preamble says is it's a shock-absorbent shoe sole, 321 patent. The 046 patent says a durable, lightweight, shock-absorbent shoe sole. That's setting the frame of reference. Within that frame of reference, the... But he can define his claim terms as he wishes. Why isn't this his definition right here? He's saying the bottom, as he means it, isn't ground contacting, it's just something beneath the upper sole. He does say that the bottom sole is fastened or attached to the bottom of the upper sole. But what that does, Your Honor, it reads the term bottom out of the claim term bottom sole. They would have it that that claim language, a bottom sole attached to the bottom of the upper sole, simply read a sole attached to the bottom of the upper sole. It's a bottom sole. In fact, the second use of the term bottom within that phrase is consistent with what Nike says because it says you're attaching that bottom sole to the bottom surface of the upper sole, the lowermost part of the upper sole. But the bottom sole component itself is the bottom sole, the outsole, and that's what's consistently shown in all of the figures. And as Judge Bryson pointed out, in the 046 patent, Mr. Lawler used the terms interchangeably, said they're the same thing. And in that patent, he links it to his earlier patent. He links the 046 patent to his earlier patent. He says this is an improvement on my earlier patent. And he says, in fact, the disclosures are in many respects and in this respect identical. What do you think is the right way? Let's assume for a moment that we agree with you that the 046 patent conclusively binds Mr. Lawler to the view that outsole and bottom sole are equivalent and the terms are interchangeable. Yes. Now, the 046, of course, comes well after the 321. What is the way analytically to look at the pertinence of that fact for analysis of the term bottom sole in the 321? Is it an evidentiary matter? Is it some evidence of what the patent applicant meant with respect to the use of that term at an earlier time? How do you propose to use that piece of evidence? It's an evidentiary matter. It's true the patents were not formally linked in the sense that the second patent was a continuation of the first. But as this court said in LK, in LK the patents that were formally related. But the court went on to say there's another reason why we're going to bind the inventor to the statements made in the second patent. And it said LK affirmatively linked the meaning of these claim terms in the second application to his first application and put competitors on notice of that linkage. Because that was the other way around, I guess. Here, the putatively broader is the first rather than the second, right? My recollection is that in that case you had the putatively broader patent was the second one, not the first, right? But in any event, it was the linkage of the two patents that was used as the second reason for saying we should look to both for what the claim terms mean. Here, Mr. Lawler, on the linkage point, what he says in the second patent, the 046 patent, in that column four, lines 35 to 42, he says it's an enhanced version. Certain elements described in the 046 patent are also shown and described in the 321 patent. Then it goes on in that column at lines 51 to 55, that's column four of the second patent, and he says, as with the inventors, previously identified shock-resistant salt, inverted shock cups are disposed within the bottom sole or outsole and passed through the midsole to absorb a substantial amount of shock during the use of the sole. He links the two, he says the structure is the same. And he says, as with my previous invention, the language he's describing here is the same language. And I think that serves to link the two as an evidentiary matter to support the district court's finding that the bottom sole is the bottom-most portion of the sole, it's the outsole. I think I'll just touch on a few points. Judge Bryson, your reaction is the same as mine. Counsel's motion... No, we don't react, we just ask questions. Oh, I'm sorry. The counsel's approach to the use of the specification, unlike the district court, as Court Pillow said, the specification is always highly relevant to claim construction analysis. It's usually dispositive. It's the single best guide to the meaning of the dispute term. Let's look at the specification. The use that they made of the specification was really to say, let's look for language of disavowal. Is there any language of disavowal? But apart from that, they shy away from the specification. It's almost as if it's a dangerous instrumentality. They don't look to it at all. Whereas the district court in its analysis, if we're looking at the claim as a whole and determining the meaning of bottom sole, looked at the specification and said, my interpretation of bottom sole is consistent with the specification. He looked to the drawings, Judge Newman. They all show it as the out sole. He looked to the 046 patent. So he looked at the specifications and found that his interpretation was consistent with the specifications. He also looked at the prosecution history. And I believe Judge Rader, when you were going through, you were asking questions about the prosecution history. The prosecution history also supports the lower court's finding as to the bottom sole being the out sole. Because you look, for example, at the rejection that you had mentioned of obviousness of Hogg and Deneuve. And both the lawyer and the examiner, and this is in the 321 patent, the first patent. In dealing with that rejection, they repeatedly equate the bottom sole, the ground patent layers of Hogg and Deneuve, as the bottom sole or out sole. And the whole discussion is equating those two. So the treatment of the inventor during prosecution of even the earlier patent with the prior art was consistent with the district court's claim construction. Because everything that's being said about bottom sole, they were equating to the out sole in dealing with the prior art. So the prosecution history was consistent with it as well. The other two arguments they made were claim differentiation, which I never really understood. They said, well, in the first patent, there were claims two and four that added additional characteristics of a bottom sole. Indeed, they did. I believe it was claim four that said the bottom sole will include rubber. Claim two said the bottom sole is a hard material. But I don't see how that claim differentiation helps among an argument that the term bottom sole is somehow broader than claim one. There was no effort by the district court to import a limitation of a dependent claim into an independent claim. Nor is there any argument here that the dependent claims are not narrower in scope than the independent claims. In fact, I submit that the dependent claims are confirmation of the fact that the bottom sole is the out sole because they're adding further characteristics of the out sole. Make it a rubber. Make it hard. The court said in fantasy sports, claim differentiation can't be used to broaden the claims beyond their correct scope. And lastly, there was the use of experts, the expert Mr. Williams. And I think the warnings that we see from time to time in this court's opinions about treating expert testimony on claim construction with a bit of skepticism, particularly where it doesn't match with the intrinsic evidence applied here. Moreover, what Lawler says is that the bottom sole, he contends it's not a term of art, but something he calls a layman's or a lay relational term. Well, if that's the position, then I don't see what role expert testimony would play in connection with his position. That's really a layman's term. It's not a term of art. So I didn't see what role his expert affidavit purports to play. His position is that's not a term of art after all. But again, I think that the admonitions of the opinions of this court that say where the expert's testimony really doesn't square with the intrinsic evidence, treat it with a bit of skepticism on the matter of law claim construction. And I submit that this report did everything correctly and its analysis was correct and should be affirmed. Thank you, Mr. Madera. Mr. Fayette. Thank you, Your Honor. I only have a few real quick points. There have been a number of cases that say that claims are not limited to a single embodiment in the specification unless there's a clear intention. Unless the inventor used words or expressions of manifest exclusion or restriction. That's in the Weibel-Floschian case, the Golight case and the Brookhill case that we cited in our brief. And also Phillips says the same thing. They're not limited to the specific disclosure in the specification. It's the claims as was set forth in Phillips that define the invention. Mr. Madera referred to in the prosecution history of the 3-2-1 patent where the examiner referred to the bottom sole of the Deneu and the Hobb prior art references. Mr. Madera said he was equating them to the bottom sole. In both of those instances, there was only one possible sole that could be a bottom sole. Deneu only had one sole and one sole only, or one-piece sole. Hobb had only a two-piece sole. So the reference to the bottom sole of Deneu as being a bottom sole was entirely correct. It doesn't tell anything about whether or not the examiner or Mr. Lawler thought that a further ground contacting layer couldn't be attached. That only an out sole could be a bottom sole. The final point I have, Your Honor, is that what Mr. Lawler said ten years later, after the 3-2-1 patent, that really can't be used to determine what was in Mr. Lawler's head ten years earlier. The reference in the 046 patent, all that means is that Mr. Lawler intended the term bottom sole in that patent to be used the same as he used it in the 3-2-1 patent. Thank you, Your Honor. Thank you, Mr. Perry. Mr. Madera, the case is taken under submission.